# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Barbara Izzarelli,<br>Plaintiff,<br><br>v.<br><br>R.J. Reynolds Tobacco Co.,<br>Defendant. | CIVIL ACTION NO.<br>3:99-cv-2338 (SRU) |

## JURY INSTRUCTIONS

Members of the jury, you now have heard all of the evidence. At this point, I am going to instruct you about the law that applies to this case. At the outset, I want to express my thanks to you for the time and energy you have devoted to this trial. Jury service is rarely convenient, but without you justice could not be done in this case.

It will take some time for me to read these instructions to you, but it is important that you pay close attention. You have been provided with a copy of my instructions so that you can read along as we go. Please feel free to write on those copies – you will be permitted to take them into the jury room with you.

My instructions will be in three parts: First, I will discuss general rules concerning the role of the court and the duty of the jury; second, I will go over the issues in this case and set out the specific questions of fact that you must answer based on the evidence at trial; and third, I will give you some rules and guidelines for your deliberations.

Before we begin, I ask you to look over the other document that was placed on your seats -- namely, the verdict form. After I have given these instructions and you hear the closing arguments of counsel, you will go back into the jury room to deliberate. You will have with you the following: the original of the verdict form, the original exhibits, your copies of these

instructions, and any personal notes that you may have taken.  At the conclusion of your deliberations, you will use the verdict form to report your verdict to the court and the parties.

## SECTION I: GENERAL INSTRUCTIONS

### ROLE OF THE COURT

As Judge, I perform basically two functions during the trial.  First, I decide what evidence you may consider.  You have heard me doing that throughout the trial.  Second, I instruct you on the law that you are to apply to the facts in this case.  I gave you some preliminary instructions before trial began, and some during the course of the trial, but it is now—at the close of evidence—that most of the instructions are given, so please be patient and listen closely.

If either of the lawyers state the law differently from the way I am explaining it to you, you are to follow my instructions.

### INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

This is a long instruction, and I may repeat certain parts.  That does not mean that those parts should be emphasized.  You should not single out any one part of my instructions and ignore the rest.  Instead, you should consider all of the instructions as a whole and consider each instruction in light of all the others.  The order in which I give you instructions does not indicate their relative importance.  Do not read into these instructions, or into anything I have said or done, any suggestion about what verdict you should return -- that is a matter for you alone to decide.

I should also point out that, although you have been given a copy of the instructions to follow as I deliver them, if I say aloud anything at all different from what is written, you must follow what I say here in court.

## BOTH SIDES ENTITLED TO FULL AND FAIR HEARING

Regardless of your ultimate decision about the parties' claims and defenses, the parties in this case are entitled to a full and fair hearing.  One of the most important functions of our system of justice is to give all the parties to a dispute a full and fair hearing, regardless of the final outcome of the case.

It is your duty, therefore, to give careful thought to every issue set forth by these instructions, regardless of any general feeling that you may have about which party is right.

## OBJECTIONS AND RULINGS

It is the duty of an attorney to object to testimony or other evidence that the attorney believes is not properly admissible.  You should not prefer or dislike an attorney or his client because the attorney made objections -- or because the attorney failed to make objections.

If I have allowed testimony or evidence that an attorney objected to, you should not give that evidence greater or lesser weight.  My rulings on objections have nothing to do with the credibility of the witnesses.

If I have sustained an objection to a question asked of a witness, you must disregard the question entirely, and may draw no inference from the question, nor speculate about what the witness would have said if he or she had been permitted to answer the question.  If I have granted a motion to strike, you must disregard the part of the answer that was stricken, because it is not evidence.

## DUTIES OF THE JURY

It is your duty to find the facts from all the evidence in the case.  In reaching a verdict you must carefully and impartially consider all of the evidence in the case and then apply the law as I have explained it to you. Regardless of any opinion you may have about what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any understanding or interpretation of the law other than the one I give you.  And you must do your duty as jurors regardless of any personal likes, dislikes, opinions, prejudices, or sympathies.  In other words, you must decide the case solely on the evidence before you, and you must do so fairly and impartially.

The verdict you reach must be unanimous; that is, agreed upon by each of you.

You must each decide the case for yourself, but do so only after impartial consideration of the evidence in the case with your fellow jurors.

## "PROVE," "FIND," AND "ESTABLISH"

Throughout the remainder of my instructions to you, I will use the word "prove" when talking about what the plaintiff must do in order to win this case.  My use of the word "prove" means "prove by the appropriate burden of proof," even if I do not always repeat those words. Similarly, when I speak of your "finding" various facts, you must find those facts to have been proven by the appropriate burden of proof, even if I simply use the word "find."  Likewise, I may speak of the parties "establishing" various facts.  Even if I simply use the word "establish," you must find that the fact has been established by the appropriate burden of proof.

## BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE

Because this is a civil case, the plaintiff has the burden of proving every disputed element of her claims by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence, the plaintiff must prove that the fact is more likely true than not true.  In other words, if you find that the credible evidence on a given issue is evenly divided between the plaintiff and the defendant, then you must decide that issue for the defendant.  However, if the plaintiff proves that a fact is more likely true than not, even slightly more true than not, then you are to find that the plaintiff has proven the fact by a preponderance of the evidence.  If the plaintiff fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of the defendant.

In determining whether an element of a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them.  A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

## SECTION II: ISSUES IN THIS CASE

I am now going to discuss the issues in this case relating to liability.  Before I begin, it is important to distinguish between liability and damages.  When I use the word "liability," I mean the legal obligation that the defendant has allegedly violated with respect to the plaintiff.  This is

different than "damages," which are an award of money to compensate the plaintiff if you find the defendant liable for the harms it allegedly caused.  You may not consider the question of damages unless you first determine that the defendant is liable for the plaintiff's injuries.  I will instruct you on damages later.  For now, please focus your attention only on the plaintiff's claims of liability, which I will discuss now.

The plaintiff in this case is Barbara Izzarelli.  Barbara Izzarelli, as you heard, suffered from laryngeal cancer and her treatment included the removal of her larynx.  The defendant is R.J. Reynolds Tobacco Company, which designed, manufactured and distributed the Salem King cigarettes that plaintiff claims caused her injuries.  R.J. Reynolds is a corporation, an entity created by the law.  The fact that the plaintiff is an individual person and the defendant is a corporation should not play any part in your deliberations.  All parties are equal before the law, and you must assess the claims and defenses of all parties without bias or regard to their status.

Barbara Izzarelli alleges that R.J. Reynolds is liable for her injuries.  Specifically, plaintiff alleges that R.J. Reynolds is liable because it designed a defective product that caused her injuries.  These claims are known as "product liability" claims.  Put another way, Barbara Izzarelli alleges that R.J. Reynolds is responsible for her injuries, because its product, Salem King cigarettes, is defective in some way.  When I use the word "product" in these instructions, I am referring to the Salem King cigarettes that R.J. Reynolds designed and sold and that Barbara Izzarelli smoked.   You may have heard about other cigarette brands during the course of trial. The only product at issue in this case is Salem King cigarettes.

Plaintiff alleges two types of claims against R.J. Reynolds.  There are multiple product liability claims in this case because Barbara Izzarelli alleges two different theories of liability – strict liability and negligent design.  Your task is to determine whether or not the plaintiff has proven one or more of her claims by a preponderance of the evidence.

<u>PRODUCT LIABILITY</u>

Under the Connecticut Product Liability Act, a product seller is liable for a person's injury when the seller's product is defective and that defect causes injury.  As applied to this case, a product seller can be liable for a defective product in two ways.  First, the product seller can be "strictly liable."  This means that the seller is responsible for injuries caused by its product if that product is defective, even if the product seller did not know or could not have reasonably known about the defect.  The second way that a product seller can be liable is if it was "negligent" in designing its defective product.  Under this theory, a seller is responsible for injuries caused by the defect only if the seller failed to exercise reasonable care in designing the product.

You have heard evidence that during the time Barbara Izzarelli smoked Salem King cigarettes, the manufacture and sale of Salem King cigarettes was legal.  The fact that a product is legal when manufactured and sold, however, does not necessarily mean the manufacturer of the product cannot be held liable for injuries caused by the product under Connecticut's product liability law.

I will now explain each of the two theories of liability in detail.

STRICT PRODUCT LIABILITY

As I said before, strict liability means that a product seller is responsible for any injuries caused by its defective product, regardless of whether the seller knew about the defect in the product.  In a strict product liability claim, the key elements that the plaintiff has to prove in this case are whether the defendant's product was defective and whether that defect caused the alleged injuries.

In order to prevail on her strict product liability claim, Barbara Izzarelli must prove each of the following five elements by a preponderance of the evidence:

1) R.J. Reynolds was a "seller" engaged in the business of manufacturing and selling Salem King cigarettes;

2)  Salem King cigarettes were defective, meaning that they were unreasonably dangerous to the consumer or user;

3)  The defect existed at the time the Barbara Izzarelli purchased or used the product;

4)  The product was expected to and did reach the consumer or user without substantial change in condition; and

5) The defect caused the injuries for which compensation is sought.

The presence or absence of negligence by the seller or manufacturer plays no part in a strict product liability claim.  Whether the seller or manufacturer knew, or should have known, about the defect also plays no part in a strict liability claim.

A product is in a defective condition if it leaves the seller in a condition that will be unreasonably dangerous to the ultimate consumer or user.  Accordingly, a product may be defective even though it was manufactured in the way it was intended to be manufactured and even though it was perfectly made according to the manufacturer's own standards and tolerances,

as long as the product is unreasonably dangerous when used for its intended and foreseeable purposes.  A product is "unreasonably dangerous" if it is dangerous to an extent beyond what would be contemplated by the ordinary consumer with the ordinary knowledge common to the community about its characteristics.  In other words, Plaintiff must prove that Reynolds' Salem King cigarettes were more dangerous than an ordinary consumer would or should expect a cigarette to be.

Both parties have stipulated, or agreed, that R.J. Reynolds was a product "seller" that manufactured the Salem King cigarettes at issue in this case.  Throughout these instructions, I will refer to R.J. Reynolds as a "seller."  This does not mean that R.J. Reynolds directly sold the cigarettes to Barbara Izzarelli; rather, it means that R.J. Reynolds designed, manufactured and distributed the Salem King cigarettes that Barbara Izzarelli smoked.  Therefore, the first element of the strict liability claims has been established by agreement.

For plaintiff to meet her burden of proving the second element, that Salem King cigarettes are defective, she must show that the Salem King cigarettes were "unreasonably dangerous" to her, the user.  If the product was not unreasonably dangerous, then it was not defective and R.J. Reynolds would not be liable even if Barbara Izzarelli was injured while using it.  With respect to cigarettes in general, I instruct you that cigarettes are not defective merely because nicotine and/or carcinogenic substances may be inherent in the tobacco from which such cigarettes are manufactured.

The plaintiff alleges that the Salem King cigarettes sold by R.J. Reynolds were defective and unreasonably dangerous in two ways:  as designed and manufactured by the defendant, the

Salem King cigarettes smoked by Barbara Izzarelli were addictive and they caused laryngeal cancer.  Remember, in order to prove this element, the plaintiff must prove that Salem King cigarettes were unreasonably addictive or that they unreasonably caused laryngeal cancer. Barbara Izzarelli does not have to prove both ways she alleges that the product was unreasonably dangerous.  If she proves by a preponderance of the evidence either that the Salem King cigarettes were defective and thus unreasonably dangerous because of their addictiveness or that they were defective and therefore unreasonably dangerous because of their effect in causing laryngeal cancer, or both, she will have proven the second element of her strict product liability claim.  If the plaintiff does not prove the product was unreasonably dangerous in at least one of the ways she asserts, then she will have failed to prove the second element of her strict liability claim.

For Barbara Izzarelli to prove that the Salem King cigarettes she smoked were defective or unreasonably dangerous, in one or both of the ways she alleges, she must satisfy at least one of two alternative tests.  She must prove either: (1) that the product is unreasonably dangerous to an extent beyond what would be contemplated by the ordinary user, in this case, the cigarette smoker, or (2) that, in light of relevant factors that I will discuss shortly, the benefits of the challenged design do not outweigh the risks of the product.

Under the first test, which is known as the "ordinary consumer expectation test," a product may be found defective in design if the product failed to perform as safely as an ordinary user of the defendant's product, with knowledge common to the community at large, would expect.  You must decide what an ordinary user of the defendant's product reasonably expected

and what knowledge was common to the community at large regarding Salem King cigarettes. In determining whether Salem King cigarettes were dangerous to an extent beyond that reasonably expected by the ordinary consumer or user, with the knowledge common to the community, you must focus on the expectations of an ordinary consumer at or near the time Barbara Izzarelli used the product, and the knowledge common to the community in which Barbara Izzarelli lived at or near the time Barbara Izzarelli used the product.

If you find that plaintiff has met her burden of proving that Salem King cigarettes are an unreasonably dangerous product under the ordinary consumer expectation test that I just described, then she has satisfied the second element of her strict product liability claim. If you find that the plaintiff failed to meet her burden of proving that Salem King cigarettes are unreasonably dangerous under the ordinary consumer expectation test, then you should turn to the second test, which is known as the modified consumer expectation test.

Under the modified consumer expectation test, you weigh the product's benefits against the risks inherent in its intended use. You must decide whether the product is more dangerous than the ordinary consumer would reasonably expect after considering the usefulness of Salem King cigarettes, the likelihood and severity of the danger posed by the design of Salem King cigarettes, the feasibility of an alternative design, the financial cost of an improved design, and the seller's ability to reduce the product's danger without impairing its usefulness or making it too expensive. The usefulness of a product may be a qualitative benefit – it need not be a benefit that can be precisely measured. In determining the usefulness or benefits of cigarettes, therefore, you may consider the pleasure, recreations, and other qualitative benefits that smokers derive

from smoking.  Under Connecticut law, the plaintiff does not need to prove that there was a feasible safer alternative design that the defendant could have used in order for you to find that the product was defective.  But, in determining whether the product was unreasonably dangerous, you may consider evidence of any such feasible alternative design.

In order to recover on her theory of strict product liability, the plaintiff must also prove the remaining three elements of this theory of liability.  She must establish the third element, which is that the defect existed at the time of sale, and the fourth element, which is that the product was expected to and did reach the user, in this case Barbara Izzarelli, without substantial change in condition.  The parties have stipulated that there was no change in the Salem King cigarettes from the time of their manufacture and distribution by the defendant to the time they were consumed by the plaintiff.  Therefore, if you find a defect in Salem King cigarettes, then I instruct you that the third and fourth elements have been established.

The plaintiff must also prove the fifth element, which is that the claimed defect caused the injury or injuries for which damages are sought.  I will now talk a bit about the causation requirement for plaintiff's strict product liability claims.

For the plaintiff's strict liability claim, the plaintiff must prove by a preponderance of the evidence that any defect you find in defendant's Salem King cigarettes was a cause in fact of Barbara Izzarelli's injuries.  This means that the product defect you find in Salem King cigarettes was an actual cause of her injuries.  The test for this element is whether plaintiff's injuries would have occurred had there been no defect in Salem King cigarettes.  If the injuries would not have occurred without a defect, then the defect was the cause in fact of Barbara Izzarelli's injuries.

12

Alternatively, if the injuries would have happened even if there had been no defect in Salem

King cigarettes, then the plaintiff has failed to prove that the defect was the actual cause of her

injuries.

The plaintiff must also prove that a defect was a "proximate cause" of her injuries.  This

means that the defect was a substantial factor in causing her cancer.  Plaintiff must prove by a

preponderance of the evidence that the defect was a material, or important, contributing cause of

her injuries.  The point of proving proximate causation is to establish that the defendant's

product was not just a cause, but was a significant cause, of the cancer.  The plaintiff does not

have to prove that the defect was the only factor, or the only substantial factor, that led to her

injuries in order to prevail.  Rather, the plaintiff needs to establish that the defect contributed

substantially.

I want to give you one final word about causation: the fact that Barbara Izzarelli was

injured is insufficient, by itself, to establish that there was a defect in defendant's product or that

any such defect caused her injuries.  You must go through the process I just described and

determine whether a defect existed and, if you find a defect did exist, then determine whether

any such defect was an actual and proximate cause of her injuries.

As I said earlier, the parties have stipulated to several of the elements of plaintiff's strict

liability claim.  You must determine whether the plaintiff has proven each of the remaining

elements by a preponderance of the evidence.  If you find that Barbara Izzarelli has met her

burden on each element, then she will have proven her strict product liability claim and you must

find R.J. Reynolds liable.  If you find that Barbara Izzarelli has failed to prove any of these elements, you must find for R.J. Reynolds on the strict liability claim.

NEGLIGENT DESIGN

I will now turn to the plaintiff's second product liability claim, which involves a claim that the defendant negligently designed its Salem King cigarettes.

Negligence is the failure to use reasonable care.  In the context of product liability, a seller, such as R.J. Reynolds, has a duty to exercise reasonable care in the design of its products. Reasonable care is that degree of care which a reasonably prudent seller would use under similar circumstances.

Negligence may consist of either doing something that a reasonably careful seller would not do under similar circumstances, or in failing to do something that a reasonably careful seller would do under similar circumstances.  The standard of care required – that of a reasonably careful seller under the circumstances – never varies, but the required degree of care may vary with the circumstances.  All of the surrounding circumstances must be considered in assessing whether the defendant exercised reasonable care.  In circumstances of slight danger a slight amount of care would be sufficient to constitute reasonable care, while in circumstances of great danger a correspondingly great amount of care would be required to constitute reasonable care.

In this case, Barbara Izzarelli has alleged that R.J. Reynolds made design decisions concerning the composition and levels of tar and nicotine delivered by its Salem King cigarettes that affected the addictiveness and cancer-causing nature of its cigarettes.  For the plaintiff to recover for negligent design, she must prove two elements by a preponderance of the evidence:

14

1) R.J. Reynolds was negligent because it failed to exercise reasonable care in designing its Salem King cigarettes; and

2) that negligent design caused her injury.

In order to meet the first of these elements, Barbara Izzarelli must prove that R.J. Reynolds was "negligent" in designing its product. To decide the first element, whether R.J. Reynolds negligently designed its product, you should place an ordinarily prudent cigarette manufacturer in the situation of R.J. Reynolds and ask yourselves what such a manufacturer would have done in view of the facts that were known, or reasonably should have been known, to it at the time. Thus, R.J. Reynolds was not negligent in designing its product merely because that product was a cigarette that contained nicotine and carcinogens. In order for R.J. Reynolds to be found liable under this theory, it must have negligently designed a cigarette with a defect that made Salem King cigarettes unreasonably dangerous.

You may use all of the facts that were presented at trial, including what was known and reasonably foreseeable in the industry at the time of the design and manufacture of the cigarettes at issue. Finally, you should use your common sense reasoning to answer this question. It is not necessary for the plaintiff to prove both of the theories of the defendant's negligence in order to satisfy this element. Proof of one allegation of negligence – either that defendant's cigarettes were negligently designed because they were more addictive than they reasonably should have been or that they were negligently designed because they were more carcinogenic than they reasonably should have been – would suffice to prove the first element of liability.

If you find that plaintiff has proven by a preponderance of the evidence that the defendant was negligent in designing its product, then you should turn to the second element of the

negligence claim.  This element requires Barbara Izzarelli to prove by a preponderance of the evidence that R.J. Reynolds' negligence caused her injuries.  The mere fact that Barbara Izzarelli was injured is not alone sufficient to establish causation.  Causation, once again, requires the plaintiff to prove that defendant's negligence was a cause in fact and a proximate cause of her injuries.  When deciding whether R.J. Reynolds' negligence was a cause in fact and a proximate cause, you should apply the same standards that I explained earlier for causation when describing the strict product liability claim.  This means that you should consider whether any failure by R.J. Reynolds to exercise reasonable care was both an actual cause of plaintiff's injury and was a substantial factor in causing the harms she suffered.

If Barbara Izzarelli has proven by a preponderance of the evidence each of the elements of a negligence theory of liability, then you must find defendant liable for its negligence.  If Barbara Izzarelli has failed to prove either of the elements of her negligence claim by a preponderance of the evidence, then you must find in favor of R.J. Reynolds on this theory of liability.

<u>SUMMARY OF PLAINTIFF'S CLAIMS OF LIABILITY</u>

In sum, the plaintiff has brought two claims for relief against the defendant, R.J. Reynolds Tobacco Company: strict product liability and negligent design.  If you find that the plaintiff has proven one or both of these claims by a preponderance of the evidence, then you should proceed to consider the question of damages.  If the plaintiff has not proven either of her theories of liability, then you should find in favor of R.J. Reynolds and not consider the issue of damages.

## DEFENDANT'S AFFIRMATIVE DEFENSE

If you find that R.J. Reynolds is liable to Barbara Izzarelli, you must next determine whether the plaintiff bears any responsibility for causing her injuries. R.J. Reynolds generally denies plaintiff's claims. Specifically, R.J. Reynolds contends that Salem King cigarettes are not defective because they are not more dangerous than the ordinary consumer would expect and R.J. Reynolds has not done anything to Salem King cigarettes to make them unreasonably dangerous.

R.J. Reynolds also asserts an affirmative defense to Barbara Izzarelli's claims known as the defense of "comparative responsibility." To establish this defense, the defendant must prove by a preponderance of the evidence that the plaintiff bears at least partial responsibility for her own injuries because she engaged in conduct that was also a proximate cause of her injuries. Under our law, the plaintiff's recovery of damages for injuries proximately caused by a defective product is not barred even if such injuries are also caused by the plaintiff's own conduct. Instead, in such circumstances, her award of damages may be diminished by a percentage representing the measure of her own responsibility for those injuries compared to the combined responsibility of all parties.

Here the defendant has alleged that the plaintiff bears at least partial responsibility for her own alleged injuries because she chose to smoke Salem King cigarettes, which she claims to have proximately caused those alleged injuries. In order to sustain its burden of proof on its affirmative defense, R.J. Reynolds must show that the plaintiff either voluntarily accepted a known risk when she used the product or failed to act as a reasonable person would have under

the circumstances. To prove acceptance of a known risk, it is not enough to simply show that plaintiff knew or should have known of the risk. Defendant must show that Barbara Izzarelli actually knew and appreciated the risk and nevertheless voluntarily proceeded to encounter it when she elected to purchase and use Salem King cigarettes. Alternatively, to prove a failure to act as a reasonable person would have under the circumstances, defendant must show that plaintiff acted negligently, that is, that she failed to use reasonable care under all the circumstances. If defendant proves either of these bases for its defense, then it has proven that plaintiff is at least partially responsible for causing her injuries.

If the defendant persuades you by a preponderance of the evidence that the plaintiff is partially responsible for proximately causing her injuries, you must next determine the comparative responsibility of all parties for those injuries. The comparative responsibility of each party who is shown to have been responsible for the plaintiff's proven injuries must be determined by assigning each of the parties a percentage of the combined responsibility for such injuries totaling 100%. Because comparative responsibility is an affirmative defense, the defendant bears the burden of proving the extent of the plaintiff's proportionate responsibility for her own injuries. In determining the comparative responsibility of the parties for Barbara Izzarelli's injuries, you must consider both the nature and the quality of each party's proven conduct.

If you find that defendant has proven by a preponderance of the evidence that Barbara Izzarelli is partially responsible for her injuries, you must apportion responsibility between the parties. In your verdict, you will state the percentages of responsibility that you assign to

plaintiff and to R.J. Reynolds. The total of those percentages must equal one hundred percent. You do not have to calculate the final amount of damages that should be awarded to the plaintiff after taking into account any percentage of responsibility assigned to her. The court will reduce the amount of the total damages you find for Barbara Izzarelli by the percentage of fault that you find attributable to her. You need to determine only the amount that you would award to plaintiff if she bore no responsibility, and the percentage of responsibility, if any, that you think should be allocated to her.

I will now instruct you on damages.

## DAMAGES

If, after deliberating, you decide that the plaintiff has proven each element of one or both of her claims, then you should turn to the issue of damages for the claim or claims you have found the plaintiff to have proven. The fact that I charge you on the law governing damages should not be taken as a suggestion that you should necessarily reach the question of damages. It is your function to decide the issue of liability; I am instructing you on elements of damages only so that you will have guidance should you decide that the plaintiff is entitled to recover damages on any claim. You should not consider the question of damages unless and until you find the defendant liable to the plaintiff.

You should award damages only for those injuries caused by the conduct that you find satisfies the elements of strict product liability and negligent design defect.

There are two types of damages: (a) compensatory and (b) punitive. Let me now explain each type to you.

## A.  COMPENSATORY DAMAGES

The first type of damages is called compensatory damages, the purpose of which is to award, as far as possible, fair and just compensation.  If you decide for the plaintiff on the issue of liability on any claim, you must then fix the amount of damages that will reasonably and fairly compensate the plaintiff for any harm caused by R.J. Reynolds' acts that give rise to liability on that claim.

Compensatory damages seek to make the plaintiff whole—that is, to compensate her for the harms that she suffered.  The rule is that, insofar as money can do it, the plaintiff is to be awarded fair and just compensation for her injuries.  Compensatory damages are measured up to the date of trial and may include probable future damages, such as pain and suffering, that plaintiff can be expected to incur as a result of the defendant's conduct that provides the basis for liability.

There are two general types of compensatory damages for you to consider: economic and non-economic damages.  Economic damages are monies awarded as compensation for monetary losses and expenses that the plaintiff has incurred, or is reasonably likely to incur in the future, as a result of the defendant's actions.  They are awarded for such things as the cost of reasonable and necessary medical care.  Non-economic damages are monies awarded as compensation for non-monetary losses and injuries that the plaintiff has suffered, or is reasonably likely to suffer in the future, as a result of the defendant's actions.  They are awarded for such things as physical pain and suffering, mental and emotional pain and suffering, mental and physical impairment, and loss

or diminution of the ability to enjoy life's pleasures.  I will now explain the law governing each type of damages in more detail.

Should you find R.J. Reynolds liable for Barbara Izzarelli's injuries, the plaintiff is entitled to any reasonable economic damages that resulted from the conduct of the defendant that gave rise to defendant's liability.  In this case, the only economic damages claimed are past medical bills; no claim for future medical expenses is being made.  Additionally, plaintiff is not making a claim for lost income or wages, therefore you should not consider plaintiff's possible loss of income or wages in calculating reasonable economic damages.

General or non-economic damages include pain and suffering, mental anguish, disruption of the ordinary activities of life, temporary partial disabilities and permanent disabilities.  In this case, plaintiff seeks compensation for the following categories of non-economic damages:

1.      Past and future physical pain and suffering stemming from her injuries.

2.      Past and future mental pain and emotional suffering stemming from her injuries.

3.      Damages arising from her present condition and the permanent disability that she has sustained.

4.      Interference with her ability to lead a normal life and enjoy life's activities.

These are proper types of compensatory damages.  The plaintiff is entitled to recover damages in an amount that will compensate her for the injuries that she has proven to you, by a preponderance of the evidence, she has suffered as a result of the defendant's wrongful conduct. You may award the plaintiff a specific sum of money for each of these individual types of injuries if you find them to be proven by a preponderance of the evidence, but you should not award duplicative damages.  In other words, for example, do not award plaintiff her medical expenses

under one claim and again under another claim, should you find more than one of the claims of liability to have been proven.

Should you make an award of future damages, you should consider the probable duration of the plaintiff's life.  In doing so, you should consider her actuarial expectancy, which is the number of years the average woman of the plaintiff's age will likely live, as shown by the mortality table.  You should also consider whether the strength, health and physical stamina of this particular plaintiff will affect the probable duration of her life, making it longer or shorter than the life expectancy of the average person of her age, as set forth in the mortality table.

In order to award compensatory damages for a given injury or harm, you must find that the plaintiff has proven by a preponderance of the evidence that the claimed injury or harm was caused by the defendant.  The plaintiff may recover fair, reasonable, and just compensation for only those elements of damage she has proven were caused by the acts of the defendant that satisfied the elements of the plaintiff's claim.  Compensatory damages must not be based on speculation or sympathy.  Damages must be based on the evidence at trial.  On the other hand, the law does not require the plaintiff to prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

There is no exact standard for fixing compensatory damages.  In closing argument, counsel may suggest an amount or method for calculating plaintiff's damages.  Counsel have the right to make such suggestions.  Such suggestions are not evidence, you are not bound to follow their suggestions, and you should consider any arguments by either counsel on damages in the same way you consider the other aspects of either counsel's arguments.  As with all of your

determinations in this case, the determination of the amount of damages is for you to make based on the evidence in this case and my instructions.

On the whole, the question of damages is a matter that is left to the conscience, good sense, and sound judgment of you, the jury.  You should not act unreasonably through bias, passion, or sympathy, but rather should exercise common sense and fix an amount of damages that, in accordance with the evidence and the law, will fairly compensate the plaintiff for any injuries suffered as the result of the conduct giving rise to defendant's liability.

You must bear in mind at all times that the burden is on Barbara Izzarelli to prove that any claimed element of damages was a proximate consequence of a proven wrongful act, as well as to prove the reasonable amount with respect to any such element of damage.


## B.  PUNITIVE DAMAGES

If you find that the plaintiff has proven one or more of her claims against the defendant and you award compensatory damages to her, then you must decide whether the plaintiff is entitled to an award of punitive damages.

The law permits, under certain circumstances, an injured person to recover punitive damages in order to punish the wrongdoer for some extraordinarily wrongful conduct, and to serve as a warning to others not to engage in such conduct.  Punitive damages, when appropriate, are intended to protect the community and to be an expression of the jury's indignation at the misconduct.  Whether you decide to award punitive damages against the defendant should be

based on whether you find that the conduct of R.J. Reynolds giving rise to liability in this case recklessly or wantonly disregarded the safety of consumers or users of Salem King cigarettes.

Reckless or wanton conduct means conduct more reprehensible than negligence or even gross negligence. If the defendant was reckless or wanton, then it had utter disregard of the consequences that might follow from its acts. Whether R.J. Reynolds acted with recklessness or wantonness may be inferred from its conduct.

If the plaintiff has proven to you that R.J. Reynolds' conduct was reckless or wanton, then you may award her punitive damages. You should not decide an amount of punitive damages that should be awarded to the plaintiff. Under the law, the court will determine the amount of punitive damages. You should use calm judgment and discretion in analyzing the facts and deciding whether to award punitive damages.

## SECTION III: INSTRUCTIONS FOR DELIBERATIONS

### THREE FORMS OF EVIDENCE

Next I want to discuss with you generally what we mean by evidence and how you should consider it. The evidence from which you are to decide what the facts are comes in one of three forms:

First, there is the sworn testimony of witnesses, both on direct examination and cross-examination, and regardless of who called the witness.

Second, there are the exhibits that have been received into the trial record.

Third, there are any facts to which all the lawyers have agreed or stipulated, or that I have directed you to find.

## WHAT IS AND IS NOT EVIDENCE

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence and the stipulations.

It is the witnesses' answers that are evidence. At times, a lawyer may have incorporated into a question a statement that assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded by the court also is not evidence and may not be considered by you in rendering your verdict. Further, if certain evidence was received for a limited purpose, you must follow the limiting instructions I have given for that evidence.

What the lawyers say in their opening statements, closing arguments, comments, objections and questions is not evidence. What they say in their closing arguments is intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, you should rely on your memory.

Moreover, what I may have said during the trial and what I say in these instructions is not evidence, and my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence. Exhibits that have been marked for identification may not be considered by you as evidence unless and until they have been received into evidence by the

court.  Exhibits were received into evidence either because the parties stipulated to their

admission, or when I said that an exhibit was admitted as a "full" exhibit.

In addition, materials used only to refresh a witness's recollection or to demonstrate or

help explain testimony are not evidence unless they are admitted as full exhibits.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard

and to the exhibits you have seen.

### DIRECT & CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may properly use in reaching your verdict.

One type of evidence is direct evidence.  Direct evidence includes a witness's testimony

about something the witness knows -- something he or she has seen, felt, touched, heard, or done

– and also includes the contents of all full exhibits.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other

facts.

For example, assume that when you came into the courthouse this morning the sun was

shining and it was a nice day.  Assume that, because there are no windows in this courtroom, you

could not look outside.  As you were sitting here, someone walked in with an umbrella that was

dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now,

you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you

have no direct evidence of that fact.  But on the combination of facts that I have asked you to

assume, it would be reasonable and logical for you to conclude that it had been raining.

26

That is all there is to circumstantial evidence.  On the basis of your reason, experience and common sense, you infer from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all of the evidence presented.  As I told you at the beginning of the trial, however, circumstantial evidence does not include guesswork or conjecture.  Circumstantial evidence consists only of the reasonable and logical inferences that you draw from other evidence in the record.

<u>INFERENCE DEFINED</u>

During the trial you may have heard the attorneys use the term "inference" and in their arguments they may have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists because another fact has been shown to exist.

There are times when different inferences may be drawn from the same facts, whether proved by direct or circumstantial evidence.  The plaintiff may ask you to draw one set of inferences, while the defendant may ask you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion that you are permitted, but not required, to

draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. The mere existence of an inference against the defendant does not relieve the plaintiff of the burden of establishing her case by a preponderance of the evidence. Finally, you may not draw any inferences from the mere fact that the plaintiff has filed this lawsuit.

WITNESS CREDIBILITY - GENERAL

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine truthfulness? You base it on what you have seen and heard. You watched the witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Was he or she frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor -- that is, his or her behavior, manner, and appearance -- while testifying? Often it is not what a person says but how he or she says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your everyday lives. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.

You should consider the opportunity the witness had to see, hear and know the things about which he or she testified, the accuracy of the witness's memory, candor or lack of candor, intelligence, the reasonableness and probability of the witness's testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible evidence.

Always remember that in assessing a witness's testimony you should use your common sense, your good judgment, and your own life experiences.

## DEPOSITION TESTIMONY

During the trial of this case, certain testimony has been presented to you by way of depositions, which consist of sworn recorded answers to questions asked of the witness in advance of the trial.  Such deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way, as if the witness had been present and had testified here in court.

## EXPERT TESTIMONY

You have heard testimony from expert witnesses in this case.  An expert is allowed to express an opinion on those matters about which he or she has special knowledge and training. Expert testimony is presented to you on the theory that someone who is knowledgeable and experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing an expert's testimony, you may consider the expert's qualifications, opinions, reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  Has the expert witness provided you with

29

a rational and reasonable basis supporting the opinions the expert offers?  When the expert undertakes to support an opinion by relating it to some basis in fact, is the basis brought forth in support of that particular opinion reasonable and logical, and in your minds, a sound basis?  You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept an expert witness's testimony merely because he or she is an expert.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

<u>IMPEACHMENT OF WITNESS</u>

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's testimony in this case.  It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If a witness testified untruthfully in some respect, you may consider that fact in deciding the weight you will give to that witness's testimony.  Considering that fact and all other relevant evidence, you may accept or reject the testimony of each witness either in whole or in part.

<u>UNCONTRADICTED TESTIMONY</u>

You are not required to accept testimony even if the testimony is uncontradicted and the witness is not discredited or impeached.  You may decide, because of the witness's manner and

demeanor or because of the improbability of his or her testimony or for other reasons, that such testimony is not worthy of belief.

On the other hand, the testimony of a single witness may be enough to convince you of a fact in dispute, if you believe that the witness has truthfully and accurately testified about that fact.

## NOTE TAKING

I must add a few general instructions concerning your deliberations.  You were permitted to take notes during the course of the trial.  Any notes you have taken should be used only as memory aids; do not give your notes more importance than your independent recollection of the evidence.  If you did not take notes, you should rely on your own memory of the proceedings and should not be influenced by the notes of other jurors.  The fact that a particular juror has taken notes entitles that juror's opinions to no greater weight than those of any other juror, and your notes are not to be shown to any other juror during the course of deliberations.

## JURY BIAS

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence.  Please bear in mind that all litigants are equal before the law.  You should not, therefore, consider any personal feelings you may have about the race, religion, national origin, sex, age, wealth, lifestyle, or other features of the parties.  In reaching your verdict you are not to be affected by sympathy for any of the parties, what the reaction of the parties or the public to your verdict may be, whether it will please or displease anyone, be popular or unpopular or,

indeed, any consideration outside the case as it has been presented to you in this courtroom. Similarly, it would be wrong for you to allow feelings you might have about the nature of the claims against the defendant to influence you in any way. The fact that R.J. Reynolds is a corporation must not affect you in any of your deliberations or in your verdict. You may not discriminate between corporations and natural individuals. Both are persons in the eyes of the law, and are both entitled to the same fair and impartial consideration by you.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence presented here. If you let sympathy or prejudice interfere with your clear thinking about the facts, there is a risk that you will not arrive at a just verdict.

## CLOSING ARGUMENTS

At this point we will interrupt the instructions to hear closing arguments of counsel. I will conclude the instructions after those summations. Remember, what the lawyers say in their closing arguments is not evidence, but it is merely argument about what the evidence shows.

[BREAK FOR CLOSING ARGUMENTS]

## LAWYERS' ARGUMENTS ARE NOT EVIDENCE

You have just heard closing arguments of counsel. I want to remind you that what the lawyers have said is not evidence, even if it seemed at times as if they were testifying. The lawyers merely presented their arguments about what the evidence has shown. Their credibility is not an issue that should enter into your decision in this case.

## **CONCLUSION**

32

Your verdict must be unanimous and represent the considered judgment of each juror.

Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors.  It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror.  Until a verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so.  However, you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to bring an end to deliberations.

Remember at all times that you are not biased, rather you are the judges of the facts and your sole interest is to seek the truth from the evidence in this case.

When you return to the jury room, you should first elect one person to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.

A verdict form has been prepared for your use.  Focusing on the questions set forth in the verdict form will assist you in your deliberations.  You must complete and return the verdict form in court when you have reached your decision.  You will be asked to answer the questions in the order in which they appear on the form, and each answer must be unanimous.  When you have reached unanimous agreement on a verdict, you will have your foreperson fill in your answers, date and sign the verdict form.  Then inform the court security officer or clerk that you have

reached a verdict (but do not tell anyone what that verdict is).  The verdict form must be used only in connection with the charge I have just given to you.  The terms used in the verdict form are discussed in my instructions, and these instructions must govern your deliberations.

I want to caution you now to take your time when completing the verdict form.  As you will see, the form consists of several questions.  Each question calls for either a "yes" or "no" answer or a monetary amount.  Answer each question as it appears and only those questions.  As you review the form, you will see that there are instructions printed in *italics print* after each question.  Please read these instructions and follow them carefully.  Depending on your answer to a particular question, it may not be necessary to answer a later question.  The *italicized instructions* will guide you through the verdict form.  Finally, be consistent in your responses.

When you go into the jury room to begin your deliberations, you will have the paper exhibits with you, but you will not have a transcript of the testimony.  Nor will you have any of the demonstrative aids used by witnesses or the audio or video clips played during trial.  If you want any of the testimony read to you, that can be done and will occur in open court.  I encourage you to limit the recitation of testimony.  It is not easy to locate specific portions of the testimony, and reading the testimony is a time consuming process, so please be as specific as possible if and when you decide to request a reading of portions of the testimony.   Similarly, should you wish to listen to or view any of the audio or video recordings admitted into evidence, that can be done in open court.

Requests that testimony be read back, as well as any other communication with the court, should be made in writing, signed by your foreperson, and given to the clerk or a marshal.  I will

respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I also must warn you that in your communications with the court you should never reveal your numerical division at any time.

It is proper to add a final caution.

Nothing that I have said in these instructions -- and nothing that I have said or done during the trial -- has been said or done to suggest to you what I think your verdict should be.  What the verdict shall be is your exclusive duty and responsibility.

Now, proceed to your deliberations in the jury room.  Deliberate only when all of you are present.  After you begin your deliberations, you are not to leave the jury room without first notifying the marshal or court security officer, who will escort you.  No deliberations may take place without all jurors being present.  If you bring your cell phones into the jury room, you must turn them off during deliberations.  Further, if at any time a juror is in the bathroom facilities or on a cell phone, the other jurors must immediately cease deliberations and may not recommence deliberations until all jurors are present.

As you deliberate, determine the facts on the basis of the evidence as you have heard it and apply the law as I have outlined it for you.  Render your verdict fairly, uprightly and without a scintilla of prejudice.  Take as long as you think is necessary to fairly and impartially reach your verdict.  Thank you for your attention.