UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Barbara Izzarelli,<br>      Plaintiff,<br><br>      v.<br><br>R.J. Reynolds Tobacco Co.,<br>      Defendant. | CIVIL ACTION NO.<br>3:99-cv-2338 (SRU) |

## RULING AND ORDER AWARDING PUNITIVE DAMAGES

Barbara Izzarelli smoked Salem King cigarettes for over twenty-five years until she was treated for larynx cancer in 1997. In 1999, she brought suit against the manufacturer of Salem Kings, R.J. Reynolds Tobacco Co. ("R.J. Reynolds"). On May 26, 2010, a jury returned a verdict in Izzarelli's favor, finding that R.J. Reynolds was liable for her injuries under the theories of strict liability and negligent design. Doc. # 429. The jury awarded Izzarelli $325,000 in economic damages and $13,600,000 in non-economic damages.[1] The jury determined that Izzarelli was 42% responsible for her injuries; accordingly, Izzarelli's total compensatory award is $7,982,250.[2] The jury also found that Izzarelli proved by a preponderance of the evidence that R.J. Reynolds should pay punitive damages.

**I.**    **Discussion**

In Connecticut, a plaintiff in a product liability action may recover punitive damages if she proves that the compensable harm suffered was a result of the defendant's reckless disregard

---

[1] Although the jury initially awarded Barbara Izzarelli $325,000 in economic damages, the evidence at trial proved economic damages in the amount of only $162,500. *See* Trial ex. 339. The parties stipulated that Izzarelli is entitled to recover only the economic damages proved at trial and thus the award is hereby reduced accordingly. Doc. # 458. The judgment shall reflect the corrected economic damages award of $162,500.

[2] This amount includes the adjusted economic damages award.

for the safety of the product's user. Conn. Gen. Stat. § 52-240b. The trier of fact determines whether the defendant's conduct rises to the level of reckless disregard and the court sets the amount of punitive damages, which are not to exceed twice the plaintiff's actual damages. *Id.* Because the jury determined that R.J Reynolds shall pay punitive damages, I must now determine the punitive damages award. At the close of trial, I requested submissions from the parties on the issue of punitive damages and scheduled a hearing on punitive damages for August 25, 2010. Following that hearing, I allowed the parties to submit supplemental briefing. *See* docs. # 455, 459. In her trial memorandum (doc. # 444), Izzarelli employed a multi-factor reprehensibility test for calculating punitive damages and argued for a punitive damages award at or near twice the compensatory award. In its submission, R.J. Reynolds urged me, *inter alia*, to fashion a nominal award. Doc. # 445.

    A.    <u>Punitive Damages under the Common Law and the Connecticut Product Liability Act</u>

In most states, the calculation of a punitive damages award takes into account a number of factors including the relative wealth of the defendant, the nature of the alleged misconduct, the facts and circumstances surrounding the conduct, the cost of the litigation, and the amount of actual damages awarded. *See generally State Farm Mutual Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). In a diversity action, however, I must follow the law of Connecticut in fashioning a punitive damages award. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278-79 (1989) ("In a diversity action . . . the factors the [fact-finder] may consider in determining [the punitive damages] amount, are questions of state law."). Connecticut's approach to fashioning a punitive damages award is distinctive. *See generally MedVal USA Health Programs, Inc. v. Memberworks, Inc.,* 273 Conn. 634, 670-73 (2005) (Zarella, J., dissenting). Connecticut's traditional formulation of a punitive damages award is rooted in a

century-old common-law doctrine that limits punitive damages to the expense of litigation less taxable costs. *Hanna v. Sweeney*, 78 Conn. 492 (1906). In common law product liability actions, punitive damages were calculated under the common-law rule. *See Waterbury Petroleum Products, Inc. v. Canaan Oil and Fuel Co., Inc.,* 193 Conn. 208, 234-35 (1984).

In 1979, the General Assembly enacted the Product Liability Act ("PLA" or the "Act"), codified at Conn. Gen. Stat. § 52-572m, et seq. The PLA codified the various common law theories of product liability. *See LaMontagne v. E.I. DuPont De Nemours & Co., Inc.,* 41 F.3d 846, 855-56 (2d Cir. 1994); *but cf. Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 520, 523 (1989) (noting that the PLA changed the law of comparative responsibility and the statute of limitations with respect to product liability claims). The Act also contained a provision for punitive damages. Conn. Gen. Stat. § 52-240b. Section 52-240b provides that:

> Punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product. If the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff.

Accordingly, I must determine the amount of the punitive damages award in favor of Izzarelli. That amount must be set within the framework promulgated by the Connecticut legislature.

Generally, where a statute authorizing punitive damages is silent about how those damages should be calculated, a court should follow the common-law rule. *See Arnone v. Enfield*, 79 Conn. App. 501, 521-22 (Conn. App. 2003). Izzarelli disagrees that the common-law rule should apply here, arguing that the Connecticut legislature abrogated the common-law formulation of punitive damages in product liability actions when it enacted the PLA, as demonstrated by certain differences between the common law and statutory product liability causes of action. Those differences beg the question whether the legislature changed the law

3

applying to punitive damages.  The statute's language and legislative history are silent concerning whether the Act's punitive damages provision abrogated or subsumed the traditional common-law formulation.  In the three decades that have passed since the enactment of the PLA, no Connecticut appellate court has been called upon to answer the question whether the PLA, *sub silento*, abrogated the common-law measure of punitive damages.  Two Superior Court decisions reach conflicting answers to that question.  *Compare Roome v. Shop-Rite Supermarkets, Inc.*, No. 020281250, 2006 WL 2556572 (Conn. Super. June 9, 2006), *with Russo v. Conair Corporation*, No. 030483600, 2004 Conn. Super. LEXIS 1797 (Conn. Super. June 30, 2004).  Thus, because there is no binding authority from the Connecticut courts, I must do my best to predict what the Connecticut Supreme Court would hold.  *Bensmiller v. E.I. DuPont de Nemours & Co.*, 47 F.3d 79, 82 (2d Cir. 2005).

      B.      <u>The Meaning and Effect of Conn. Gen. Stat. § 52-240b</u>

The proper measure of punitive damages under the PLA is a question of statutory construction.  "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes.  If, after examining such text and considering such relationship, the meaning of such text is plain and ambiguous . . . extratextual evidence of the meaning of the statute shall not be considered."  Conn. Gen. Stat. § 1-2z.  The Connecticut Supreme Court's holding in *Lynn v. Haybuster Mfg., Inc.*, 226 Conn. 282 (1993), is particularly instructive with respect to questions concerning the interpretation of the PLA.  In *Lynn*, on certification from the district court, the Connecticut Supreme Court considered whether the legislature intended to bar claims for loss of consortium when it enacted the PLA.  "In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict . . . ."  *Id.* at 288-90 (quoting *Willoughby v. New Haven,* 123 Conn. 446, 454

4

(1937)). A court must not extend, modify, repeal or enlarge the statute's scope by virtue of statutory construction and the court shall only interpret a statute to "impair an existing interest or to change radically existing law . . . if the language of the legislature plainly and unambiguously reflects such an intent." *Id.* at 289-90. The *Lynn* Court held that "[t]he rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." *Id*. at 290, *citing* 3 J. Sutherland, Statutory Construction (5th ed. Singer 1992 Rev.) § 61.01, pp. 172-73. Accordingly, I must strictly construe section 52-240b.

In accordance with the principles set forth in section 1-2z and *Lynn*, I first examine the language of section 52-240b to determine whether it clearly abrogates the common-law measure of punitive damages. In doing so, I am mindful of the Court's direction that "the legislature's intent is derived not in what it meant to say, but in what it did say." *Lynn,* 226 Conn. at 290. The pertinent provision of the statute is comprised of two sentences; the first defines the circumstances warranting punitive damages ("reckless disregard"); and the second prescribes who shall award damages and the limit of those damages ("court shall determine the amount . . . not to exceed . . . twice the damages").

### 1. Recklessness

The language of the first sentence of section 52-240b articulates the standard for determining whether punitive damages are available. It provides that "[p]unitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard . . . ." The sentence incorporates a standard strikingly similar to that stated by the Connecticut Supreme Court in *Vandersluis v. Wells*, 176 Conn. 353, 358 (1978) ("Punitive damages are awarded when the evidence shows a reckless indifference . . . ."); *see also Harty v.*

*Cantor Fitzgerald & Company*, 275 Conn. 72, 93 n.12 (2005) ("We disagree with the defendant's argument that the same type of conduct is required for double damages. . . . [C]ommon-law 'punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of these rights.'"), *quoting Alaimo v. Royer*, 188 Conn. 36, 42 (1982). The language of the first sentence of section 52-240b exhibits a clear legislative intent to adopt the common-law standard of reckless disregard as the standard for authorizing punitive damages under the PLA.

The legislative history of the PLA also supports the conclusion that the legislature intended to adopt the traditional common-law standard. The initial proposed bill, based on the Draft Uniform Product Liability Act ("UPLA"), called for a "clear and convincing" evidentiary standard for the award of punitive damages and stated that:

> (a) Punitive damages, in addition to attorney's fees, may be awarded if claimant shows by clear and convincing evidence that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product.

Legislative History of "An Act Concerning Product Liability Actions," P.A. 79-483, 1979 House Bill No. 5870, Proposed Substitute House Bill No. 5870, at 6 [hereinafter "Proposed Bill"].

The Connecticut legislature, however, did not adopt the "clear and convincing" evidentiary standard and passed instead a provision embodying the previously accepted "preponderance of the evidence" evidentiary standard for common-law punitive damages. *See* Robert B. Yules, *An Analysis of Connecticut's New Product Liability Law*, 56 Conn. B.J. 269 (1982) ("The U.S. Department of Commerce's Task Force recommended that punitive damages be imposed only on the basis of clear and convincing evidence, not merely on a preponderance

6

of the evidence standard.  The Connecticut version does not contain such a standard.").[3]

### 2. *Measurement of Punitive Damages*

By rejecting proposed legislation that would have authorized punitive damages "in addition to attorney's fees," the legislature declined to expand punitive damages beyond the common-law measure of litigation less taxable costs.  The legislature's intent to preserve the common-law measure for punitive damages calculation was also demonstrated by the legislature's explicit rejection of the UPLA's multi-factor test for quantifying punitive damages.  The proposed bill, modeled on the UPLA, initially provided that:

> (b) If the trier of fact determines that punitive damages should be awarded, it shall determine the amount of such damages.  In making the determination, the court shall consider: (1) The likelihood at the time of manufacture that a serious harm would arise from the product seller's misconduct, (2) the degree of the product seller's awareness of such likelihood of harm, (3) the profitability of misconduct to the product seller, (4) the duration of the misconduct and any concealment of it by the product seller, (5) the attitude and conduct of the product seller upon discovery of the misconduct, (6) the financial condition of the product seller, and (7) the total effect of other punishment imposed or likely to be imposed upon the product sellers as a result of the misconduct, including punitive damage awards to persons similarly situated to the claimant and the severity of criminal penalties to which the product seller has been or may be subjected.

Proposed Bill at 6.  The legislature declined to incorporate this method of calculation into the PLA, enacting instead a provision that provides only that "[i]f the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff."  Conn. Gen. Stat. § 52-240b; *see also* Yules, 56 Conn. B.J. 269 ("Further, the UPLA provided eight guidelines for the court in determining the amount of punitive damages to be awarded while Connecticut's

---

[3] Although the proposed language also required a showing of "reckless disregard," there is nothing that suggests that the legislature derived its standard from the proposed UPLA instead of the common-law standard.  *See generally Lynn,* 226 Conn. at 290.

version does not have any such suggested guidelines. The Connecticut product liability law contains a limitation on the amount of punitive damages while the UPLA's version does not."). The legislature's outright rejection of the multi-factor method of calculation demonstrates its intent to preserve the common-law formulation.

The second sentence of section 52-240b imposes a punitive damages cap of twice the compensatory damages. Izzarelli argues that limitation evinces a clear intent to break from the common-law doctrine that punitive damages should make the litigant whole. *See Hanna,* 78 Conn. at 493-94; *Berry v. Loiseau*, 223 Conn. 786, 827 (1992); *Harty,* 275 Conn. at 97. I agree that the second sentence reflects a desire on behalf of the legislature to limit punitive damages awards in a manner that in some instances may conflict with the common-law doctrine of making the litigant whole.[4] I do not agree, however, that the statutory cap alone demonstrates a clear intention to disturb the traditional method of calculating a punitive damages award. Instead, the limitation is wholly consistent with the purpose of the Act. *See discussion, infra at section C.*

        3. *Constitutionality of Conn. Gen. Stat. § 52-240b*

Izzarelli also maintains that, if section 52-240b did not displace the common-law formulation of damages, then the statute is in conflict with plaintiff's right to a jury trial on the amount of punitive damages in violation of Art. I, §19 of the Connecticut Constitution; a right Izzarelli claims to be axiomatic under the common-law rule.[5]

---

[4] Izzarelli, of course, can make no claim that the statutory cap on punitive damages will prevent her from being made whole.

[5] Section 19 states that "[t]he right of trial by jury shall remain inviolate."

8

I find no support for the assertion that, under the common-law rule, a party was entitled to a jury determination of the cost of litigation.[6] The Connecticut Supreme Court in *Berry v. Loiseau,* 223 Conn. 786, 822-23 (1992), considered a similar argument concerning a common-law punitive damages award and declined to entertain the claim that it is a constitutional deprivation to allow the court to calculate a punitive damages award. *Id.* ("In his separate appeal, the plaintiff challenges the sufficiency of his punitive damages award. The plaintiff claims the trial court improperly: (1) denied him a constitutional right to have the jury determine the amount of his punitive damages award . . . and mounts a general challenge to our rule governing the measure of common law punitive damages.").[7]

Izzarelli seeks to expand the right to have a jury determine whether punitive damages should be awarded into a right to have a jury calculate those damages. Izzarelli relies on the

---

[6] Putting aside the fact that Izzarelli did not preserve this issue at trial, the argument is a curious one. It is rare for a successful plaintiff to claim that the statute under which she prevailed at trial is unconstitutional. If successful on this claim, Izzarelli's verdict would be put at risk – at least with respect to the punitive damages issue – and, at any retrial of the punitive damages issue, the common law rule (which Izzarelli opposes) would presumably apply in absence of the supposedly unconstitutional statute. Thus, Izzarelli would risk her verdict in order to have a jury, rather than the court, "find" the stipulated amount of her litigation costs. Luckily for Izzarelli, there is no merit to her argument.

[7] In response to the latter challenge, the Court unequivocally rejected the argument and held that:

> In *Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co.,* . . . we declined a similar invitation to stray from our well settled rule regarding the measurement of punitive damages. We affirmed the continuing viability of a long line of cases holding that common law punitive damages serve primarily to compensate the plaintiff for his injuries and, thus, are properly limited to the plaintiff's litigation expenses less taxable costs. We recognized, moreover, that our rule, when viewed in the light of the increasing costs of litigation, also serves to punish and deter wrongful conduct. In recent years, we have continued to adhere to the view that our traditional rule remains viable. We remain convinced that a rule limiting punitive damages awards to the expense of litigation less taxable costs fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury.

*Berry*, 223 Conn. at 826-27 (internal citations and quotations omitted).

9

holdings of *Chykirda v. Yanush*, 131 Conn. 565, 567-68 (1954), and *Bishop v. Kelly*, 206 Conn. 608, 620 (1988), to support the argument. In *Chykirda,* the trial court instructed the jury that "[p]unitive damages consist of the expenses of the action that the plaintiff must meet, including the attorney's fee, from which 'would be deducted what are known as the taxable costs,'" and that "it was mathematically impossible to determine the attorney's fee." *Id.* at 567. The trial asked the jury to arrive at a punitive damages figure "as best they could." *Id.* at 567-68. "The practice of allowing such damages without any evidence as to the items properly to be taken into account, and without calling the attention of a jury to the taxable costs of which the court can take judicial notice," the Connecticut Supreme Court held, "has not been satisfactory." *Id.* The Court took the opportunity to "abolish the practice of claiming such damages in the absence of evidence as to them" and holding "that punitive damages are not properly recoverable in the absence of evidence as to the elements entering into a determination of them except for those items of taxable costs of which the trial court can take judicial notice." *Id.* at 569. The Court's holding in *Chykirda* creates no right to have a jury determine the amount of punitive damages to be awarded, but only a requirement that a plaintiff present evidence of actual damages, i.e., costs of litigation, in order to recover them.

Similarly, the Court in *Bishop* did not hold that parties have a right to have a jury determine the amount of punitive damages. The Court held unconstitutional a statute that relegated to the court the duty to determine whether a defendant's conduct "manifests so deliberate or reckless a disregard of these statutes" that an award of damages was appropriate. Under the statute struck down, the trial court was charged with making a factual finding that "is crucial to the question of the defendant's liability for multiple damages." *Bishop,* 206 Conn. at 620-21. That situation is the converse of the one before me.

10

In the present case, the jury was charged with determining whether or not R.J. Reynolds' conduct evinced a reckless or wanton disregard of the consequences of its acts; I instructed the jury that, if necessary, I would set the amount of punitive damages. Izzarelli did not object to, and in fact expected, such an instruction. *See* doc. # 404 at 6 (Plaintiff's Proposed Jury Instructions) ("In this case, the jury is not being asked to make an actual award of punitive damages, but only to determine whether such an award is justified. The Court's instruction in this regard as currently stated on the top of page 25 . . . properly states the punitive damages inquiry. . . ."). Accordingly, neither the cited cases nor Izzarelli's assertions in this case support a determination that the court's reservation of the duty to calculate punitive damages, as required by section 52-240b, conflicts with Art. I, § 19 of the Connecticut Constitution. Indeed, the delegation to the court of the duty to set the amount of common-law punitive damages is commonplace. *See Berry*, 223 Conn. at 791; *Champagne,* 212 Conn. at 559; *Charron v. Town of Griswold*, No. 065000849S, 2009 WL 3086234 (Conn. Super. Aug. 21, 2009) (The court instructed the jury "[i]t is, instead, a matter for your sound discretion. In connection with punitive damages, you need not decide the amount of punitive damages to award; you need only decide whether the plaintiff has proven by a preponderance of the evidence that she is entitled to punitive damages. If you find for the plaintiff, you will be asked in the interrogatories to further determine if she is entitled to punitive damages. The issue as to the amount of punitive damages, if awarded, is thereafter left to the court.").

      C.     <u>Legislative History of the PLA</u>

Turning again to the language of the Act itself, its stated purpose addresses concerns associated with the rising cost of product liability litigation and insurance, which had created an "unfavorable climate for manufacturing and commerce." Legislative History of "An Act

Concerning Product Liability Actions," P.A. 79-483, 1979 House Bill No. 5870, Preface at 1. "The General Assembly sought to remedy this situation by codifying various common law approaches to product liability" in a single act. *Id.* The desire to curb the rising cost of product liability litigation and insurance resulted in a legislative desire to cap punitive damages. Thus, the interpretation suggested by Izzarelli is in direct conflict with the Act's stated purpose. In Izzarelli's view, although the legislature was concerned with containing the cost of product liability litigation, it purposefully did away with an established method of calculating punitive damages and opened up the possibility of awards far in excess of the cost of litigation. The statutory cap on a punitive damages award provides no indication that the legislature sought to allow the possibility of large punitive damages awards. Instead that cap discourages expensive litigation of cases involving small compensatory damages by preventing a plaintiff from recovering a large punitive award based on the cost of litigation where the compensatory award is comparatively small. This is what happened in *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 36-37 (2000), in which the Court upheld a common-law punitive damages award of $120,000 for counterclaimant's litigation expenses where the jury found in favor of counterclaimant with respect to its claim of tortious interference but awarded $0 in compensatory damages. Although a plaintiff who suffers relatively minor harms may not be compensated his or her entire litigation expenses in a product liability action, the limitation of punitive damages to the cost of litigation with a twice-damages cap comports with the purpose of the Act. Only in cases with minimal injuries will the statutory cap on punitive damages conflict with the common law doctrine of punitive damages, which seeks to make a successful plaintiff whole. I therefore conclude that the legislature did not abrogate the common-law measure of punitive damages by enacting section 52-240b.

Lastly, to the extent that Izzarelli urges me to consider the measure of punitive damages employed by courts in actions brought under Connecticut's Unfair Trade Practices Act ("CUTPA") and Connecticut's Uniform Trade Secrets Act ("CUTSA"), I am not persuaded that either act informs the interpretation of the PLA.  First, unlike the PLA, CUTPA is not a codification of common law causes of action.  Thus, no question arises whether the legislature intended CUTPA's statutorily-created punitive damages provision to subsume a pre-existing common-law measure of punitive damages.[8]  Second, although CUTSA is a statutory codification of Connecticut common law causes of action, its punitive damages provision simply reflects an adoption of section 3 of the Uniform Trade Secrets Act, which provides, in pertinent part: "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a)."  Subsection (a) provides for the award of actual damages.  The adoption of this uniform language, in contrast to the legislature's express rejection of the UPLA, manifests a desire to conform to the majority approach to punitive damages in causes of action brought under the Trade Secrets Act.[9]

Absent clear direction from the Connecticut General Assembly or the Connecticut courts, I must predict how the Connecticut Supreme Court would decide this issue of state law.[10]

---

[8] CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  The Act is not modeled on Connecticut common law doctrine, but on the Federal Trade Commission Act.  CUPTA created a new consumer protection scheme under Connecticut law.  *See* 16 H.R. Proc. Pt. 14, 1973 Sess., pp. 7321-24 (remarks of Rep. Howard A. Newman).

[9] Conn. Gen. Stat. § 35-53 provides, in part, that "if the court finds willful and malicious misappropriation, the court may award punitive damages in an amount not exceeding twice any award made under subsection (a)."  The terms exemplary damages and punitive damages are used interchangeably by Connecticut courts.

[10] In the usual course, when a federal court is faced with an undecided issue of state law of this importance, certification to the Connecticut Supreme Court pursuant to Conn. Gen. Stat. § 51-199b(d) would be appropriate.  Certification at this stage, however, would cause only further delay in a case that

13

Although the standard for fashioning a punitive damages award under the PLA is disputed here, I have unearthed no controlling case holding that section 52-240b displaced the longstanding common-law principle that punitive damages are equal to litigation costs less taxable costs. To the contrary, the legislative history of the PLA and the available case law support a prediction that the Connecticut Supreme Court will hold that the appropriate measure of punitive damages in product liability cases is the common-law measure of the cost of litigation. [11]

> D. An Award of the Full Amount of Litigation Expenses is Warranted

In its brief on punitive damages, R.J. Reynolds argues that "despite the jury's verdict, there is no basis on which to award punitive damages in this case" and that a nominal award would be sufficient. Doc. # 445 at 1. R.J. Reynolds also claims that any punitive damages award must be limited only to the harm suffered by Izzarelli and that the punitive damages award should be no more than sufficient to achieve Connecticut's interests in punishment and deterrence. Although R.J. Reynolds raised the arguments unaware of Connecticut's common law rule limiting punitive damages awards to the plaintiff's cost of litigation, I address each of

---

was already ten years old when transferred to my docket. At oral argument the parties expressed concern that there are other questions of state law that may be certified on appeal; accordingly, certification at this stage is unnecessary and would be inefficient. *See* doc. # 468 at 19-22.

[11] Although not binding, the Office of Legislative Research ("OLR") has responded to inquiries concerning the availability of punitive damages and the method of calculating those damages in Connecticut; its guidance is informative. *See Punitive Damages,* Office of Legislative Research Report, 97-R-1140 (Oct. 1, 1997). In response to these inquiries the OLR has stated: "In Connecticut, punitive damages are awarded under either specific statutory provisions or common law. No statute or practice rule, however, establishes a standard for punitive damages awards in general. Instead, various civil statutes provide for punitive damage awards in discrete situations. These statutes usually declare what the governing standard is: whether the award is mandatory or discretionary with the court or trier of fact; and what the amount should be, including whether it is subject to a maximum dollar figure." The OLR, citing *Bodner v. United Servs. Auto. Ass'n*, 222 Conn. 480 (1998), noted that "[w]here punitive damages are awarded under the common law, or the applicable statute is silent as to their amount, the general rule is that they are limited to attorneys' fees and nontaxable costs." *See also* Wright, FitzGerald & Ankerman, Connecticut Law of Torts §174, (3d ed. 1991) ("It has been held by the Connecticut Court that punitive or exemplary damages shall be limited to the actual cost of the litigation, including the attorney's fee, over and above the taxable costs which would be awarded to any prevailing party.").

14

those arguments to the extent that they relate to an award of punitive damages pursuant to section 52-240b.

### 1. The Jury's Finding of Recklessness

R.J. Reynolds contends that, because the jury was not asked to identify the specific conduct that formed the basis of its decision to award punitive damages, Izzarelli is not entitled to a punitive damages award. R.J. Reynolds posits that because the jury <u>may have</u> rendered its decision based on evidence R.J. Reynolds objected to, i.e., evidence concerning youth marketing, misrepresentations and statements by other cigarette manufacturers, the jury's decision to award Izzarelli punitive damages should be disregarded. R.J. Reynolds has not identified, nor have I found, any case law in support of the proposition that a jury's verdict must specify the exact elements of a defendant's conduct that it found to be reckless or wanton in order to support an award of punitive damages. Furthermore, R.J. Reynolds did not object to the verdict form given to the jury with respect to punitive damages, nor did it propose specific jury interrogatories on the issue. *See* doc. # 424 at 49 (Transcript of the Charge Conf.); *see also* doc. # 366 at 27 (Def's Proposed Jury Instructions and Verdict Form). Here, where the jury has already decided that Izzarelli has proven by a preponderance of the evidence that R.J. Reynolds should pay punitive damages, I must set that amount. Conn. Gen. Stat. § 52-240b.

### 2. An Award of the Cost of Litigation is Appropriate

Although R.J. Reynolds urges a nominal award, section 52-240b sets the amount of punitive damages that I must award. Because punitive damages are set at plaintiff's cost of litigation, many of R.J. Reynolds' arguments concerning its good conduct and due process rights are moot. Under the PLA, my task is not to decide whether Izzarelli should receive more or less than her cost of litigation, but to simply determine her cost of litigation. To the extent that any of

R.J. Reynolds' arguments survive, I address each in turn.

First, an award of the cost of litigation is directly tied to Izzarelli's harm. Under section 52-240b, the punitive damages award is limited to Izzarelli's cost of litigation and therefore the award is related to Izzarelli's harm in that it is limited to the financial cost incurred by Izzarelli in bringing her claim against R.J. Reynolds. Second, punitive damages awarded under section 52-240b serve an important state interest by "strik[ing] a balance [and] providing for the payment of a victim's cost of litigation, which would be otherwise unavailable to [her] . . . [the] rule fulfills the salutary purpose of fully compensating the victim for the harm inflicted on [her] while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury." *Waterbury Petroleum Products, Inc.*, 193 Conn. at 237-38.

Lastly, with respect to R.J. Reynolds' claims concerning due process, I find that a punitive damages award limited to the cost of litigation comports with due process. *See generally BMW of North America v. Gore*, 517 U.S. 559 (1996). In a series of decisions including *Gore, State Farm,* and *Phillip Morris USA v. Williams*, 549 U.S. 346 (2007), the Supreme Court outlined factors that federal and state courts must consider in reviewing a punitive damages award. One factor dictates that the measure of punitive damages must be reasonable and proportionate to the amount of harm and to the general damages recovered. *State Farm*, 538 U.S. at 426. In *State Farm*, the Court posited that a "ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* at 425; *see also Exxon Shipping Co. v. Baker*, 544 U.S. 471, 425 (2008). Here, by operation of section 52-240b, Izzarelli, at most, could have recovered twice her actual damages. Izzarelli's cost of litigation, however, is less than half of her total compensatory award and well within the 1:1 ratio discussed in *State Farm* and *Exxon*. Accordingly, the punitive damages award in this case is

16

reasonable and proportionate to the amount of harm suffered by Izzarelli and to the amount of compensatory damages awarded by the jury.

## II.     Conclusion

For the foregoing reasons, I reject Izzarelli's contention that the PLA abrogated common-law punitive damages in product liability cases and order that R.J. Reynolds shall pay Izzarelli $3,970,289.87 in punitive damages, an amount that reflects the parties' stipulated $3,547,666.67 in attorneys' fees and $422,623.20 in non-taxable costs. [12]   Accordingly, Barbara Izzarelli's total award is $11,952,539.87.

The clerk shall enter judgment and close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 21st day of December 2010.

/s/ Stefan R. Underhill  
Stefan R. Underhill  
United States District Judge

---

[12] The parties have stipulated to Izzarelli's costs.  Docs. ## 458, 469.